December 20, 1978

### 78-69  MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL, DEPARTMENT OF AGRICULTURE

### Comprehensive Employment and Training Act (29 U.S.C. § 812)—Food Stamp Act of 1977 (7 U.S.C. § 2026(b)(2))—Use of Funds for Food Stamp Workfare Projects

This is in response to an inquiry by the General Counsel of your Department concerning the funding of "workfare" projects under the Food Stamp Act of 1977 and the availability of funds authorized by the Comprehensive Employment and Training Act (CETA) to meet employment-benefit and administrative costs associated with workfare pilot projects required by § 17(b)(2) of the Food Stamp Act of 1977.[1] We conclude that, subject to limited exceptions, CETA funds are not available to cover such costs.

### I. Background

Section 17(b)(2) of the Food Stamp Act directs the Secretary of Agriculture to implement, jointly with the Secretary of Labor, a total of 14 "pilot projects involving the performance of work in return for food stamp benefits. . . ." In order to receive such benefits, certain persons subject to the work-registration requirements of the Food Stamp Act must

> . . . accept an offer of employment from a political subdivision or a prime sponsor pursuant to the Comprehensive Employment and Training Act of 1973, as amended (29 U.S.C. 812), for which employment compensation shall be paid in the form of the [food stamp] allotment to which the household is otherwise entitled. . . .[2]

The number of work hours for participants in the program depends upon such factors as other employment and the amount of food stamp benefits they

---

[1] Title XIII, § 1301, of Pub. Law. No. 95-113, 91 Stat. 913, 977, 7 U.S.C. 2026(b)(2).

[2] The cited provision of CETA, 29 U.S.C. 812, contains the definition of "prime sponsor" as it originally appeared in the 1973 statute, Pub. Law No. 93-203, 87 Stat. 841. As amended in 1978, the CETA definition of "prime sponsor" appears in § 101, Pub. Law No. 95-524, 92 Stat. 1917, 29 U.S.C. 811.

receive. For some persons, the requirement would be only a few hours each week.

Section 17(b)(2) goes on to state that, before a job offer may be made pursuant to the foregoing provision, "all of the political subdivision's or prime sponsor's public service jobs supported under the Comprehensive Employment and Training Act of 1973 . . . are [to be] filled . . . ."

CETA was amended in 1978.[3] Title II of the 1973 version authorized public service employment programs. Assistance was available to "prime sponsors," a term that included States and certain units of local government.[4] Prior to the 1978 amendments, § 205(c) set forth some 25 assurances that must be contained in an application for financial assistance for a public-service employment program, and § 208 set forth some 14 conditions. Section 17(b)(2) of the Food Stamp Act provides that some, but not all, of the CETA provisions concerning assurances and conditions apply to the workfare projects.

The workfare provision of the Food Stamp Act originated in an amendment by Congressman Findley[5] and was included in the bill reported by the House Committee on Agriculture. Pertinent to the present issue is the following portion of the House report:[6]

> The Federal government's responsibilities in connection with workfare would consist of providing food stamp allotments to complying households . . . and nothing else. There would be no Federal cost-sharing for any local or state administrative costs associated with workfare, such as the provision of shovels or brooms, since those are not food stamp program administrative costs of the state public assistance agency pursuant to section 16(a), but are costs borne by CETA sponsors or political subdivisions, and there is no specific provision for paying them under section 17(b)(2). Further, the local and state costs of developing public service employment programs are already underwritten by the Federal government. [See 29 U.S.C. § 843(b) and § 962(b)]

The bill passed by the Senate did not contain any provision regarding workfare. The conference committee adopted a modified version of the House provision.[7] Except for the statement in the House report, we have found nothing in the legislative history relating to the present issue.

In February 1978, the Acting General Counsel of the Department of Agriculture requested the Solicitor of Labor's views regarding the availability of CETA funds to cover administrative and employment-benefit costs for the

---

[3]See the Comprehensive Employment and Training Act Amendments of 1978, Pub. L. No. 95-524, 92 Stat. 1909.

[4]See footnote 2, supra.

[5]H. Rept. No. 95-464, 95th Cong., 1st sess. (1977), p. 858 (House report). This report relates to H. R. 7940. On July 26, 1977, the House of Representatives incorporated into H. R. 7171 the provisions of H. R. 7940. 123 Cong. Rec. H 7789 (daily ed.).

[6]House Report, pp. 370-371.

[7]H. Rept. No. 95-599, 95th Cong., 1st sess. (1977), p. 202.

workfare projects. In response, the Solicitor stated that the workfare projects would be separate from CETA programs and that, with limited exceptions (*e.g.*, the cost of counseling a person who is subject to the workfare requirement and also eligible for a CETA program), CETA funds could not be used for the workfare projects.

The Food Stamp Act requires the Secretary of Agriculture and the Secretary of Labor to submit periodic reports on workfare projects "to the appropriate committees of Congress." In May 1978, the first such report was sent to the House Committee on Agriculture and the Senate Committee on Agriculture, Nutrition, and Forestry. The report included the following:

> We are also studying the issue of whether CETA sponsors are eligible to receive any Federal funds for administration of workfare. The House Agriculture Committee clearly directed that no food stamp administrative funds should be available for this purpose. The Solicitor of the Department of Labor has advised that CETA funds may not be used for administration of workfare, since the CETA authorizing legislation does not permit funds to be used in support of jobs for which employees are given no wage compensation. The Department of Agriculture is requesting an opinion from the Department of Justice on this issue.

In July 1978, the Department of Agriculture published two proposals regarding the workfare program, a regulation and a notice of intent. 43 F.R. 29950. The proposed notice of intent stated that: "There will be no Federal cost-sharing for any administrative or employee benefit costs incurred by the workfare sponsor." Paragraph D, 43 F.R. 29954.

The previous month the Secretary of Agriculture recommended to Congress that § 17(b)(2) of the Food Stamp Act be amended to extend the submission date of the workfare program final report from March 29, 1979, to October 1, 1980. At the time of the House debate on the question, Congressman Findley inserted a statement in the Congressional Record concerning Agriculture's position regarding inability to use CETA funds for administration of workfare, other than for recordkeeping and data collection.[8] However, the issue of Federal funding of workfare administrative costs or employee benefits did not come up for consideration in either the House or the Senate. The bill, extending the date for the final report, became law on September 30, 1978.[9]

As noted above, amendments to CETA were enacted in 1978.[10] Although the Act was revised substantially, none of the amendments dealt with the Food Stamp Act workfare program,[11] and our review of the legislative history has disclosed no mention of the workfare program.

---

[8]124 Cong. Rec. H. 10085 (daily ed., Sept. 19, 1978).

[9]Pub. L. No. 95-400, 92 Stat. 856.

The Department of Agriculture Appropriation Act for fiscal year 1979, Pub. L. No. 95-448, 92 Stat. 1073, 1090 (Oct. 11, 1978), does not mention the workfare program.

[10]Pub. L. No. 95-524 was signed by the President on October 27, 1978. Regarding the effective date of the CETA amendments, *see* § 4, 92 Stat. 2018, 29 U.S.C.A. 801 note.

[11]There is no reference to workfare in the continuing resolution that appropriates funds for CETA activities during fiscal year 1979, Pub. L. No. 94-482, 92 Stat. 1603 (Oct. 18, 1978).

On November 28, 1978, the Department of Agriculture and the Department of Labor published their final workfare regulation and notice of intent. 43 F.R. 55334. The introductory statement notes that the Solicitor of Labor "has issued an opinion that funds available for the administration of public service employment through . . . [CETA] generally cannot be legally used for this [workfare] project."

The notice of intent, which seeks proposals for workfare projects, indicates that the expense of administrative activities and employee benefits is to be borne by the sponsors. There would be reimbursement, however, for the cost of collecting data required for evaluation of the program.

## II. Discussion

In the opinion request, the General Counsel expressed the view that, while food stamps would be used for the wages of persons taking part in the workfare projects, Food Stamp Act funds could not be used to meet the administrative expenses of workfare sponsors or the cost of employee benefits for participation in the projects. We agree with that interpretation of the Food Stamp Act, but do not agree with the view that the Food Stamp Act and its legislative history indicate that CETA funds may be properly used for such administrative and employee-benefit costs.

Workfare projects are not CETA projects, but are "legally separate and distinct from CETA programs run by the same State or local government or organization." Therefore, the Solicitor of Labor concluded that CETA funds could not, as a general matter, be used to reimburse sponsors for the costs of administering the workfare projects. We concur. Public-service employment programs under CETA, whether instituted before or after the 1978 amendments, must satisfy a number of conditions. Although workfare projects must meet some of the pre-1978 conditions, such projects are not projects authorized by CETA. No provision in the Food Stamp Act expressly amends CETA, and statements in the House report could not have that effect. The House report (*see* H. Rept. No. 95-464, 95th Cong., 1st sess. (1977), p. 371) cited § 203(b) and § 602(b) of the pre-1978 version of CETA.[12] Those sections provided for the use of CETA funds with respect to public-service employment programs under Title II or Title VI, respectively, of CETA. As pointed out by the Solicitor of Labor, workfare projects do not come under any title of CETA. The separate nature of CETA programs and workfare is not altered by the fact that the workfare sponsor may also be the prime sponsor of a CETA program.

The position of the Solicitor of Labor regarding this matter was brought to the attention of Congress in the May 1978 report of the two Departments and was also reflected in the proposed notice of intent (published in July 1978). If the congressional committees differed with Labor's view, corrective action could have been taken in connection with the 1978 amendment of § 17(b) of the Food Stamp Act or the amendment of CETA. No such action was taken.

---

[12] 29 U.S.C. 843(b) and 962(b) (1975 Supp.).

In these circumstances, it was proper for the two departments to include in the final notice of intent a provision on funding that was consistent with the Labor position.

The Solicitor's letter referred to certain limited situations in which CETA funds could properly be used in connection with the workfare projects. It is our opinion that, except for those situations, CETA funds are not available for workfare projects.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*